## SOUTHWESTERN OIL & REFINING CO. v. MORGAN. (No. 11317.)*

(Court of Civil Appeals of Texas. Fort Worth. Dec. 19, 1925. Rehearing Denied Feb. 6, 1926.)

1. **Mines and minerals ⊗⟼74.**

Plaintiff *held* not to have discharged burden of proof as to measure of damages from alleged breach of contract to convey undivided one-half interest in oil leases.

2. **Mines and minerals ⊗⟼109.**

Evidence *held* not to show defendant oil company wrongfully prevented plaintiff from performing contract to drill.

3. **Mines and minerals ⊗⟼74.**

Permitting driller to file laborer's lien on leasehold constituted breach of contract to keep leasehold estate clear of such lien.

4. **Mines and minerals ⊗⟼74—Damages held not recoverable for legally justified forfeiture of contract to convey interest in oil leases, although forfeiture was exercised to dispose of interest forfeited upon more favorable terms.**

Damages *held* not recoverable by plaintiff for a legally justified forfeiture of his contract providing for conveyance to him of interest in oil leases, notwithstanding forfeiture was exercised to dispose of interest forfeited upon more advantageous terms.

5. **Mines and minerals ⊗⟼74.**

Plaintiff, suing for alleged breach of contract to convey to him interest in oil leases, had burden of sustaining his claim by evidence sufficient at least to make out prima facie case.

Appeal from District Court, Archer County; H. R. Wilson, Judge.

Suit by David H. Morgan against the Southwestern Oil & Refining Company and others, which was dismissed as to T. B. White. Judgment for unnamed defendants but in favor of plaintiff against the company, and the latter appeals. Reversed and rendered.

Fischer & Fischer, of Wichita Falls, for appellant.

J. L. Lackey, of Wichita Falls, and·Yankee, Holmes, Eaton & Gleason, of Wichita, Kan., for appellee.

DUNKLIN, J. The Southwestern Oil & Refining Company has prosecuted this appeal from a judgment rendered against it in favor of the plaintiff, David H. Morgan, for damages sustained by Morgan for the alleged breach of defendant's written contract to convey to him an undivided one-half interest in and to oil leases on 4,373 acres of land in consideration of Morgan's contract to drill the land for the purpose of developing it for the production of oil and gas.

The trial of the case was before the court without a jury and findings of fact and conclusions of law by the trial judge, upon which the judgment was based, are shown in the record.

The contract upon which the suit was predicated was dated February 13, 1924, prior to its execution, Morgan had already begun the drilling of a well upon the land for the purpose of discovering oil or gas thereon in paying quantities, and by the terms of the contract between the parties he agreed to continue the drilling of the well already started with due diligence to a depth of 2,000 feet, unless gas or oil in paying quantities was discovered at a shallower depth. It was further agreed that, if that well was drilled to a depth of 2,000 feet without discovering oil or gas in paying quantities, he would drill a second well to the same depth if necessary to make it a paying well. Morgan further contracted to prosecute the drilling of the wells continuously in the ordinary and usual manner, except that he would not be required to drill on Sundays and holidays, and to keep the leasehold estate free and clear of any and all liens for labor and material, and the contract stipulated that the term "due diligence" would include performance of those obligations. The cost of drilling the wells and all expenses of every kind and character incident thereto was to be borne by Morgan.

[1] It was further provided in the contract that, if Morgan should fail to prosecute the drilling of the wells with due diligence, then the defendant would have the right, at its option, to declare the contract terminated and of no further force or effect, and to take charge and control of the leasehold estate and any and all wells that Morgan may have drilled thereon, and thereafter to use the same without paying to Morgan compensation for the purpose of completing said wells, but that, if Morgan performed his obligations as fixed by the contract, he should receive an undivided one-half interest in the leases on the entire acreage. Prior to the execution of the written contract between the defendant and plaintiff, plaintiff had employed T. B. White to drill the first well. By the terms of that contract White obligated himself to do the drilling for a consideration of $4 per foot, and to drill it to a depth of 2,000 feet, unless oil or gas in paying quantities was discovered at a shallower depth, and to furnish all necessary tools, material, labor, and equipment. White agreed to begin the work on or before January 2, 1924, and thereafter continue it with due diligence. Morgan agreed to furnish fuel oil and pay for the hauling thereof to be used by White in the drilling operations. At the time the drilling contract was entered into, Morgan paid White the sum of $1,500 to be applied on the contract and agreed to pay

---

the balance due thereon upon the completion of the well.

John Turbeville owned the fee-simple title to the land, and had executed an oil and gas lease thereon to the defendant company. On February 16, 1924, Morgan assigned to A. W. Hepworth, of Chicago, Ill., an undivided two-thirds interest in his contract made with him by the defendant, in consideration of Hepworth's agreement to carry out Morgan's drilling contract with the defendant. R. K. Wilson was Hepworth's representative, who came to Texas from Chicago to look after the drilling operations in controversy. As Hepworth's representative, Wilson made some payments to White for drilling and for furnishing and hauling fuel oil for drilling operations.

Dr. C. V. Comfort was president of the defendant company and executed the contract with plaintiff as such president. On February 19 or 20, 1924, Wilson returned to Chicago from the field of operations, and thereafter he left the conduct of those operations to driller White. During practically all of the drilling operations by White, the plaintiff Morgan had left the state, relying upon White and Hepworth to drill the wells which he had contracted with the defendant to drill. On February 19th or 20th, he communicated with White over long distance telephone from another state, and was informed by the latter that drilling operations had been shut down upon instructions of Turbeville and Dr. Comfort. On February 20, 1924, the defendant granted plaintiff permission to cease drilling operations until March 20th, upon the express condition that drilling operations would be resumed on or before the expiration of that extension period. On the 24th of March, White, the driller, filed a mechanic's or laborer's lien upon the lease for an alleged indebtedness due him by plaintiff Morgan for shut-down time of drilling operations,. at the rate of $50 per day, which, as stated in his affidavit filed as a part of his lien, was the price which Morgan had agreed to pay for such delay. The affidavit contained the further statement that White had drilled the well to a depth of 1,430 feet. He claimed a lien for $5,720 as the amount due for drilling at the contract price of $4 per foot, and allowed as a credit on his account the sum of $3,300, $300 of which was the amount paid for fuel by Wilson for Hepworth. The remaining $3,000 had been paid in two installments of $1,500 each, one by Morgan and one by Wilson. The amount claimed for shut-down time from February 21st to March 24th at $50 per day was $1,650.

In plaintiff's pleading it was alleged that, soon after the execution of the contract by the defendant, and while plaintiff was performing the same, the defendant conspired with other parties to deprive the plaintiff of the benefit of his contract by causing the drilling of the well to be shut down, and thereby enable the defendant to claim a forfeiture of plaintiff's contract, under and by virtue of the stipulations therein requiring him to pursue the work of drilling with due diligence. It was further alleged that, in pursuance of that conspiracy, the defendant induced the driller, T. B. White, to file a laborer's lien against said property for an alleged debt due him by the plaintiff, when in fact plaintiff was not indebted to him in any sum, and, in order to induce White's co-operation, the defendant paid him a certain sum of money, alleged to be for shut-down time, which in fact was caused by the wrongful acts of defendant in inducing White to cease drilling operations; that, pursuant to said conspiracy, the defendant took charge of the well and lease and dispossessed the plaintiff thereof on May 10, 1924.

It was further alleged in his pleadings that plaintiff was induced to delay the resumption of the drilling after the same had ceased, by persuasion on the part of the defendant to enter into a compromise agreement with it for the settlement of the controversy growing out of the cessation of the drilling operations, which compromise agreement defendant never intended to perform, but which was used as a means to induce plaintiff to desist from work on the well, thereby furnishing defendant with a pretext for claiming a forfeiture on plaintiff's part of his contract with the defendant.

Plaintiff concluded his petition with a prayer for specific performance of the contract on the part of the defendant, and for an injunction to restrain the defendant from preventing plaintiff from continuing drilling operations in order to perform his part of the contract; and, in the alternative, plaintiff prayed for damages for the breach of the contract by the defendant in the sum of $125,000. Plaintiff alleged that the reasonable market value of the one-half interest in the leases which defendant contracted to convey to him for the completion of his contract was $150,000. He alleged that it would not have cost him more than $25,000 to complete all of the drilling to be done under said contract, and he credited the said full value of his interest in the lease with $25,000 as the cost to complete his contract, thus leaving a balance of $125,000, and in that manner he fixed the amount of damages sued for. T. B. White, F. M. Nichols, F. W. Fischer, and Walter R. Comfort were all made party defendants in the suit, and they were charged with the same conspiracy and wrongs that were charged against the defendant company, but White was dismissed by the plaintiff, and judgment was rendered in favor of Nichols, Fischer, and Comfort; but judgment was rendered in plaintiff's favor against the defendant company for the sum of $5,000, with interest and costs of suits, as damages for breach of the contract.

The trial judge filed the following findings of fact and conclusions of law:

"(1) I find that drilling was stopped on the well in question through instructions or by action of Dr. Comfort, president of the Southwestern Oil & Refining Company.

"(2) I find that the charge of conspiracy alleged against all the defendants is not sustained, but that the Southwestern through Dr. Comfort is responsible.

"(3) I find that plaintiff was willing and ready to carry out the contract of drilling, and that the contract was breached by the Southwestern Oil & Refining Company.

"(4) I find that the value of the acreage at the time operations were stopped was $5 per acre.

"(5) I find and conclude, as a matter of law, that plaintiff cannot be placed in statu quo, and that his contract cannot be restored to him for performance by him.

"I conclude that he is entitled to damages for breach of the contract, and that the sum of $5,000 is a fair and reasonable compensation for such damages. I conclude that judgment for this amount ought to be rendered in favor of plaintiff against the Southwestern Oil & Refining Company, and that a lien should be established upon and against all the acreage of such company to secure his amount."

If it would have cost plaintiff $25,000 to complete the drilling which he had contracted to perform, as alleged in his petition, then, according to the findings by the trial judge, the correctness of which is unchallenged by the plaintiff, he sustained no damages at all by the alleged breach of the contract by the defendant company. On the contrary, he profited by the termination of the contract. According to the written contract between the parties, he was to receive an undivided half interest in the oil lease that covered 4,373 acres of land. As found by the trial court, at the time drilling operations were stopped, that lease was worth $5 per acre, or $21,865. One-half of that entire acreage was therefore worth $10,932.50, which is less than half of the amount which plaintiff alleged in his petition it would have cost him to finish the two wells. Furthermore, the contract which plaintiff made with White stipulated for the payment of $4 per foot for the drilling of the first well, which would be $8,000 in the aggregate, and the evidence shows that only $3,000 of that had been paid for the drilling of the first well to a depth of 1,430 feet. This would leave a balance required to finish that well of $5,000 to say nothing of additional expenses of furnishing fuel. And the proof shows that Wilson, Hepworth's agent, paid $300 on account of fuel used by White in drilling the well down to the depth to which it was drilled. No proof was offered by plaintiff to show whether or not he could have procured White or any other person to drill the second well for a cheaper price than $4 per foot. If a presumption be indulged that the second well could have been drilled as cheaply as the first well, it would have required $8,000 to finish it, and that amount, added to the $5,000 necessary to finish the first well, would aggregate $13,000, which sum is largely in excess of the value of one-half of all of the leases on the entire tract of land, as found by the trial court. No proof was offered to show that oil in paying quantities could have been found at a shallower depth than 2,000 feet, or at that depth, and the burden was upon the plaintiff to show that fact, if he expected to recover damages upon that theory. Indeed, he failed to discharge the burden of proof as to the measure of the damages claimed by him upon any theory.

[2, 3] Moreover, the testimony introduced was insufficient to sustain the allegation that the defendant company wrongfully prevented the plaintiff from performing his contract. The extent of the proof offered upon that issue was testimony of plaintiff and another person, to the effect that Turbeville, the owner of the fee-simple title to the land, and Dr. Comfort, president of the defendant company, had stopped the drilling in order that Turbeville, by reason of a temporary suspension of the drilling of plaintiff's first well, might gain some advantage as against a lessee of other land owned by him and not covered by the lease he made to the defendant company, and on which plaintiff agreed to drill the two wells in controversy. But, opposed to that testimony, was the uncontroverted proof that the drilling of the first well which plaintiff undertook to finish was suspended prior to February 20th; that the defendant then voluntarily agreed to allow plaintiff 30 days' time within which to resume the drilling, with the distinct understanding that it would be resumed before the expiration of that period; that thereafter drilling was not resumed until some time in May, when, according to the allegations in plaintiff's petition, the defendant took possession of the lease and ousted plaintiff therefrom. As noted above, the proof further showed that in the meantime White, the driller, had filed a laborer's lien on the lease for the amount claimed to be due him in the sum of $4,570, and no proof was offered to sustain plaintiff's allegation that the defendant instigated, or in any manner induced, the filing of that lien. The failure of plaintiff to prevent such an incumbrance on the defendant's property was a breach of his contract made with the defendant to keep the leasehold estate free and clear of any such lien.

[4] If the defendant had the legal right to declare a forfeiture of plaintiff's contract by reason of the filing of the laborer's lien, no damages would be recoverable for the exercise of that right, even though it should be said that the assertion thereof was for the purpose of disposing of defendant's interest upon more advantageous terms than those embodied in its contract with the plaintiff.

Knowles v. Gary & Burns Co. (Tex. Civ. App.) 141 S. W. 189, and authorities cited in the opinion in that case; Pye v. Cardwell, 222 S. W. 153, 110 Tex. 572; 26 R. C. L. 757; 12 R. C. L. 237.

[5] In order to show a right of recovery, the burden was upon the plaintiff to sustain his claim by evidence sufficient to make out at least a prima facie case, and, since he failed to discharge that burden, the judgment of the trial court is reversed, and judgment is here rendered in favor of the appellant. The judgment in favor of the other defendants named in the suit, of which no complaint is made, is left undisturbed.